UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DAVID CHUTE, et al.,           )
                               )
        Plaintiffs,            )
                               )
             v.                )      NO. 3:12-0607
                               )      Judge Trauger/Bryant
JEREME ODOM, et al.,           )
                               )
        Defendants.            )

TO:  The Honorable Aleta A. Trauger, District Judge


**REPORT AND RECOMMENDATION**

        Defendants State of Tennessee, Jereme Odom, Cape

Taylor, Tim Cleveland, Steve Patrick, and Ed Carter ("State

Defendants") have filed a motion to dismiss this action against

them on November 29, 2012.  (Docket Entry No. 107).  Plaintiffs

Chute timely responded with an opposition to State Defendants'

motion on December 14, 2012.  (Docket Entry No. 115).

        For the reasons states below, the undersigned

Magistrate Judge recommends that State Defendants' motion to

dismiss be GRANTED.


**I.  Statement of the Case**

        Plaintiffs filed a <u>pro se</u> Complaint on June 13, 2012.

(Docket Entry No. 1).  In response to this court's November 5,

2012 Order that Plaintiffs file an Amended Complaint (Docket

Entry No. 105), Plaintiffs filed a 103-page Amended Complaint on November 20, 2012. (Docket Entry No. 106) The Amended Complaint makes it clear that Plaintiffs' claims arise out of two primary events. First, on March 12, 2011, Defendant Jereme Odom allegedly forced Plaintiff Kathleen Chute to delete photographs from her digital camera that she had taken of a shooting victim.

Second, Plaintiffs complain of the fact that Defendant Odom sued them for harassment, libel, slander, and intentional infliction of emotional distress in the General Sessions Court of Montgomery County, Tennessee. Defendant Odom initially received a temporary restraining order against both Plaintiffs on June 4, 2012. (Docket Entry No. 106). After a trial on July 25, 2012, Judge Goble issued a permanent injunction against the Chutes and awarded judgment of $20,000.00 against them for slander, libel, and intentional infliction of emotional distress in favor of Odom. Plaintiffs allege that the State Defendants have harassed them as a result of these and other events.

In total, Plaintiffs' complaint enumerates seventeen counts against nine Defendants, including six State Defendants represented in this motion. Five of these are individuals who are sued solely in their official capacities; the State of Tennessee is the sixth Defendant. Counts I-IV are brought pursuant to 42 U.S.C. § 1983 for various violations of

Plaintiffs' constitutional rights; counts V-XV allege violations of the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101 et seq.; and, counts XVI and XVII allege violations of Tennessee common law. Plaintiffs seek injunctive relief and damages, both compensatory and punitive, for a total of $10,000,000.00.

State Defendants now bring this motion to dismiss all claims against them on the ground that Plaintiffs have failed to state any claim upon which relief can be granted.

## II.   Standard of Review

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This requirement of accepting the truth of the complaint's factual allegations does not apply to legal conclusions, however, even where such conclusions are couched as factual allegations. Id. Although Federal Rule of Civil Procedure 8(a)(2) requires merely "a short and plain statement of the claim," the plaintiff must allege enough facts to make the claim plausible, not merely possible. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). He must plead well enough

so that his complaint is more than "a formalistic recitation of the elements of a cause of action." <u>Id.</u> at 555. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." <u>League of United Latin Am. Citizens v. Bredesen</u>, 500 F.3d 523, 527 (6th Cir. 2007).

While a <u>pro se</u> complaint is "to be liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers," <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)), "basic pleading essentials" still apply. <u>See Wells v. Brown</u>, 891 F.2d 591, 594 (6th Cir. 1990). Moreover, "[d]istrict courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments. To do so would 'require . . . [the courts] to explore exhaustively all potential claims of a <u>pro se</u> plaintiff, . . . [and] would . . . transform the district court from its legitimate advisory role to the improper role of advocate seeking out the strongest arguments and most successful strategies for a party.'" <u>Dixie v. Ohio</u>, 2008 WL 2185487, at *1 (N.D. Ohio, May 23, 2008) (quoting <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985)).

### III.  Analysis

State Defendants raise the defense of sovereign immunity, which is relevant to the analysis of each of Plaintiffs' claims.  Sovereign immunity is a "well-established immunity of a State from being sued without its consent."  Will v. Michigan Dept. of State Police, 491 U.S. 58, 67 (1989).  Moreover, "the [Eleventh] Amendment prohibits suits against a 'state' in federal court whether for injunctive, declaratory or monetary relief."  Lawson v. Shelby Cnty., 211 F.3d 331, 335 (6th Cir. 2000).  However, two exceptions to sovereign immunity exist.  The first is where Congress, or a state, has explicitly and unmistakably abrogated the immunity.  Hoffman v. Conn. Dept. of Income Maintenance, 492 U.S. 96, 101 (1989).  Second, a state is not immune from suit when it has consented to being sued.  Lawson, supra at 334.  Plaintiffs do not argue that either of these exceptions applies here.

A suit against a state official in his official capacity is deemed to be a suit against the state.  Will, 491 U.S. at 71 (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)); Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994).  A claimant against a state official in his official capacity cannot obtain monetary relief, but can obtain forms of prospective relief such as injunctive relief.  Kentucky v.

<u>Graham</u>, 473 U.S. 159, 167 n.14 (1985); <u>Ex parte Young</u>, 209 U.S. 123, 157 (1908).

Plaintiffs do seek injunctive relief in this case.[1] Generally speaking, before a permanent injunction is to be issued, a plaintiff must show (1) irreparable injury, (2) there are no adequate remedies at law, (3) in balancing the hardships on both parties, the equitable remedy is warranted, and (4) it is not against public interest to order an injunction. <u>eBay, Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006); <u>Audi AG v. D'Amato</u>, 469 F.3d 534, 550 (6th Cir. 2006). Concerning constitutional violations specifically, the Sixth Circuit requires that before an injunction is issued by a federal court, "A party . . . [must] establish that it suffered a constitutional violation and will suffer 'continuing irreparable injury' for which there is no adequate remedy at law." <u>Women's Med. Prof'l Corp. v. Baird</u>, 438 F.3d 595, 602 (6th Cir. 2006) (citing <u>Kallstrom v. City of Columbus</u>, 136 F.3d 1055, 1067 (6th Cir. 1998)). Thus, if there is no "irreparable injury" or no constitutional violation has occurred, Plaintiffs are not entitled to injunctive relief.

---

[1] Specifically, Plaintiffs request: "Injunctive relief for all the municipalities to help the People of Tennessee receive the best of Law enforcement, Judicial services and fairness and most importantly that all people in Tennessee Benefit from our suffering." (Docket Entry No. 106, at 101).

### a. Section 1983 Counts

42 U.S.C. § 1983 states, in relevant part:

> Every person who, under color of any
> statute[ or] ordinance . . . of any
> State . . . subjects, or causes to be
> subjected, any citizen of the United States
> . . . to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to
> the party injured . . . .

As a threshold matter, "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983" for the purposes of monetary relief. Will, 491 U.S. at 71 (noting, however, that state officials are subject to suit for injunctive relief). In enacting § 1983, Congress did not abrogate sovereign immunity from monetary damages for states and their employees acting in their official capacities. Rodgers v. Banks, 344 F.3d 587, 594 (6th Cir. 2003). Plaintiffs explicitly allege actions taken by Defendants in their official capacities only (Docket Entry No. 106, at 5, 6, 13, 76, 77, 78, 79), and the pleadings and motion papers (in which qualified immunity was not raised as a defense) cannot be otherwise construed as revealing notice to the Defendants of the potential for personal liability. See Rodgers, supra. Therefore, the State of Tennessee and State Defendants are immune from suit for monetary relief under § 1983, and such claims against them must

be dismissed.  What remains of the § 1983 claims are Plaintiffs'
prayer for prospective injunctive relief.

Section 1983 of 42 U.S.C. authorizes injunctions "in
highly unusual and limited circumstances."  Honey v. Goodman,
432 F.2d 333, 340 (6th Cir. 1970).  Specifically, "threatened or
imminent bad-faith prosecutions by illegally motivated state
officials, brought for the purpose of suppressing First
Amendment rights under valid laws, must be enjoined."  Honey,
432 F.2d at 342 (citing Taylor v. Kentucky State Bar
Association, 424 F.2d 478, 480 (6th Cir. 1970)).

Count I.  Plaintiff's first count contains fourteen
claims.  (Docket Entry No. 106, ¶144).  Claims (a), (k), (l),
and (m), seeking to vindicate Plaintiffs' rights under the
First, Fourth, and Fourteenth Amendments, are all based on the
alleged events which occurred on March 12, 2011.  State
Defendants argue that the statute of limitations has run on
these claims, and that they are time barred.  Congress did not
enact a statute of limitations for § 1983 actions, but the
Supreme Court determined in Wilson v. Garcia that the
limitations period for a § 1983 action is determined by the
local jurisdiction's time limitation for an analogous action.
471 U.S. 261, 266-67 (1985).  Specifically, injuries redressible
under § 1983 should be characterized as personal injuries, so
the state's statute of limitations for personal injury claims

applies.  Id. at 280.  Tennessee Code Annotated § 28-3-104(a)

sets a one-year limitations period for personal injury actions,

including actions claiming damages under the federal civil

rights statutes.  Tenn. Code Ann. § 28-3-104(a)(1), (3).[2]  See

also Berndt v. State of Tenn., 796 F.2d 879, 883 (1986).  Since

these six claims are based on events that occurred on March 12,

2011 and this suit was not filed until June 13, 2012, Plaintiffs

failed to file these claims on time.  Thus, these claims are

time-barred and should be dismissed.

Claim (b) states that Defendants acted in a way that

deprived Plaintiffs of "the right not to be deprived of liberty

without due process of law."  (Docket Entry No. 106, ¶144).

Effectively, it appears that Plaintiffs argue that the

restraining order issued by the state court deprived them of

their liberty without procedural due process.[3]

Concerning a deprivation of procedural due process,

the Sixth Circuit has held,

> In order to establish a procedural due
> process claim in a § 1983 action, plaintiffs
> must establish three elements:  (1) that

---

[2] Plaintiffs argue that the Court in Wilson determined that § 1983 claims are
subject to a three-year limitations period.  (Docket Entry No. 115, at 4).
It is true that the limitations period that resulted from the Wilson case was
three years, but that was only because the Court applied the New Mexico
limitations period, which was three years.  Wilson, 471 U.S. at 280.

[3] Defendants, on the other hand, characterize this claim as a false
imprisonment claim.  While there is no doubt Plaintiffs conflate their due
process and false imprisonment claims throughout the complaint, see, e.g.,
Docket Entry No. 106, ¶117, since Count V explicitly alleges False
Imprisonment, it appears Count I, claim (b) alleges another cause of action.

> they have a life, liberty, or property
> interest protected by the Due Process Clause
> of the Fourteenth Amendment, (2) that they
> were deprived of this protected interest
> within the meaning of the Due Process
> Clause, and (3) that the state did not
> afford them adequate procedural rights prior
> to depriving them of their protected
> interest.

Med Corp., Inc. v. City of Lima, 296 F.3d 404, 409 (6th Cir.

2002) (quotations omitted). Thus, Plaintiff must allege facts

sufficient to suggest the existence of each of these three

elements in order to plausibly state a claim.

Plaintiffs indicate the temporary restraining order

was issued on June 4, 2012 and that they received a hearing on

June 20, 2012. (Docket Entry No. 106, ¶¶ 102, 113, 124, 125).

Tennessee Rule of Civil Procedure 65.03(5) requires that a

hearing must take place within fifteen days of issuance of a

restraining order, or else the order will expire. Furthermore,

according to the Tennessee Court of Appeals, "due process rights

[are] adequately protected by the requirement in Rule

65.03(5) . . . ." TPI Corp. v. Wilson, No. E2007-02315-COA-R3-

CV, 2008 WL 3821077, at *4 (Tenn. Ct. App. Aug. 15, 2008).

Plaintiffs have made no allegation that the court failed to

comply with the Tennessee rule, so Plaintiffs have failed to

show they were deprived of adequate procedural rights. Thus,

they fail to state a claim of a deprivation of liberty without

due process concerning the temporary order under Plaintiffs'
Count I, claim (b).

The undersigned finds that Plaintiffs also fail to
state a claim concerning the permanent injunction issued by the
state court.  This permanent injunction caused a deprivation of
Plaintiffs' liberty interest.  However, they have not
established that their interest was deprived without being
afforded "adequate procedural rights prior to depriving them of
their protected interest."  Med Corp., Inc., 296 F.3d at 409.
While plaintiffs assert conclusory allegations that the General
Sessions trial was "without affording any fairness to the
Plaintiffs," Docket Entry No. 106, ¶117, a "carless [sic]
decision to please a friend," id., a "biased decision," id., a
"negligent abuse of process," id. ¶118, and an "unfair process,"
id., Plaintiffs allege no real facts that support these
conclusory claims.  Since Plaintiffs have not alleged facts
showing that they were deprived of adequate procedural rights,
they have failed to state a claim of deprivation of liberty
without due process for the permanent injunction against them
under Count I, claim (b).

Claims (c), (f), and (h)[4] appear to be related, having
to do with deprivation of property, including public trust

---

[4] Asserting "the right not to be deprived of property without due process of
law;" "the right to just compensation for taking of property;" and "the right
to walk freely under the 'public doctrine,'" respectively.

property, without due process and without just compensation resulting from the temporary restraining order and permanent injunction to keep away from Defendant Odom. However, given the due process standard discussed above, these claims are not supported by sufficient factual allegations to state a plausible claim to relief. Rather, these claims are built upon entirely conclusory allegations of constitutional harm, and so fail to state a claim upon which relief can be granted.

Claims (d), (i), and (j)[5] under Count I, concerning the alleged misuse of power by state officials, likewise contain conclusory allegations without clearly identifying underlying facts. Beyond making vague references to the fact that Defendant Odom happened to be in some parks at the same time as the Plaintiffs, and that he possibly came within a few hundred feet of Plaintiffs and may have videotaped them or made hand gestures, Plaintiffs have not connected any actual facts to these three claims. Further, the questions of harassment and police misconduct were determined by the General Sessions Court of Montgomery County, and the doctrine of collateral estoppel applies. "Collateral estoppel is properly raised in a Rule 12(b)(6) motion to dismiss." <u>Scherer v. JP Morgan Chase & Co.</u>,

---

[5] Asserting "the right to be free from excessive use of power by persons acting Under Color of State Law;" "the right to be free from police harassment;" and "freedom of under color law enforcement misconduct," respectively.

508 Fed. Appx. 429, 434 (6th Cir. Dec. 11, 2012) (citing Evans v. Pearson Enter., Inc., 434 F.3d 839, 849-50 (6th Cir. 2006)). The Supreme Court, in Montana v. U.S., said, "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." 440 U.S. 147, 153 (1979) (citations omitted).

Concerning harassment, claim (i), Plaintiffs instituted a civil action against Defendant Odom, asking the General Sessions court for a Restraining Order against him. (Docket Entry No. 56). However, the court denied their request and dismissed it with prejudice after "carefully consider[ing] the relief sought." (Docket Entry No. 56). Thus, the court necessarily determined the harassment issue before denying now Plaintiffs' request, so that issue is barred from re-litigation. The only allegation of law enforcement misconduct, claim (j), is the episode of Defendant Odom burning tires, recorded on video by Plaintiffs. However, the General Sessions Court of Montgomery County determined that no misconduct took place. Instead, the burning was "standard construction practice. A concerted effort to 'burn tires' was not found to have taken place. Further, no evidence is presented that a few tires being caught in debris, and burned, was, or is, a criminal offense."

(Docket Entry No. 56). Plaintiffs argue that they fall into an exception from the rule of collateral estoppel because they "did not have a '<u>full and fair opportunity to litigate</u>' the issue[s] decided by the state court." (Docket Entry No. 115 at 3) (emphasis in original) Defendants called the General Sessions trial a "sham" and "not . . . non-discriminatory." <u>Id.</u> However, re-litigating the claims in federal court is not the appropriate remedy to this alleged problem, given that Plaintiffs had only begun their journey through the state court system, and would appear to have had rights of further appeal in state court. Thus, claims (d), (i), and (j) do not state a claim upon which relief can be granted, so they should be dismissed.

Claim (e), "[T]he right to be free from being accused guilty before being innocent," does not allege a cognizable or coherent cause of action, and claim (n), "[T]he right to represent yourself in a court of law 'Pro Se,'" similarly does not allege an actionable cause. These should both be dismissed.

Finally, claim (g) seeks relief for a violation of Plaintiffs' "right to be free from cyber harassment" in violation of 47 U.S.C. § 223(a)(1)(C).[6] However, 47 U.S.C. § 223

---

[6] 47 U.S.C. § 223(a)(1)(C) states: "Whoever-- makes a telephone call or utilizes a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to annoy, abuse, threaten, or harass any specific person . . . shall be fined under Title 18 or imprisoned not more than two years, or both."

is a criminal statute that creates criminal liability.  No
private right of action was created by the statute.  <u>Ashland</u>
<u>Hosp. Corp. v. International Broth. of Elec. Workers Local 575</u>,
807 F.Supp.2d 633, 644-45 (E.D. Ky. 2011) (citations omitted).
Therefore, Plaintiffs have failed to state a claim, and claim
(g) of Count I should be dismissed.

Thus, Claim I does not allege facts that permit
injunctive relief against Defendants.

<u>Count II.</u>  This count (Docket Entry No. 106, at 77-80)
alleges that Defendant Odom "implicitly or explicitly adopted
and implemented careless and reckless policies, customs, or
practices, that included, among other things, of allowing
employees of the State of Tennessee and the Montgomery County
Emergency Medical Service to conspire [to violate constitutional
rights of Plaintiffs]."  Additionally, Plaintiffs allege in
several paragraphs that Defendants Taylor, Cleveland, Patrick,
Carter, and the State of Tennessee (1) "implicitly or explicitly
adopted and implemented a careless and reckless policy, custom,
or practice of allowing employees of the [TWRA] to continue
allowing Jereme Odom to harass, intimidate and be employed"; (2)
failed to stop a "continu[ing] abuse of power, police
misconduct, misappropriation . . . and ongoing harassment"; and,
(3) acted with deliberate indifference to Plaintiffs' rights due

to "failure . . . to adequately train and supervise Defendant Jereme Odom."

First, concerning the allegation against Defendant Odom, Plaintiffs have not connected any specific facts to these legal conclusions. Alternatively, it appears that Plaintiffs generally are referring to an event that took place on March 12, 2011. As noted above, claims based on events taking place on that day are time-barred and should be dismissed.

Plaintiffs' allegations against Defendants Taylor, Cleveland, Patrick, Carter, and the State of Tennessee are based on respondeat superior theories. Respondeat superior is generally not a basis for imposing liability on supervisory or administrative officials under § 1983 for actions taken by their supervised employees who allegedly violated a right of the plaintiff. Polk County v. Dodson, 454 U.S. 312, 325 (1981); Wingo v. Tenn. Dept. of Corrections, 499 Fed. Appx. 453, 455 (6th Cir. Sept. 7, 2012). However, in very narrow instances supervisory personnel can be liable under § 1983. To properly allege such liability, "a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, Dunn v. State of Tennessee, 697 F.2d 121, 128 (6th Cir. 1982), or at least acquiesced in the alleged unconstitutional activity of a subordinate. Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.

1984)." Wingo, 499 Fed. Appx. at 455. In other words, a
plaintiff suing supervisory officials under § 1983 must be able
to point to some type of "causal connection between the
misconduct complained of and the official sued." Dunn, 697 F.2d
at 128. The causal connection can be proven by showing that the
supervisor was confronted with conduct of a subordinate that is
"obvious, flagrant, rampant, and of continued duration, rather
than isolated occurrences, or with such a widespread pattern of
constitutional violations." Doe ex rel. Doe v. City of
Roseville, 296 F.3d 431, 440-441 (6th Cir. 2002) (quoting Braddy
v. Florida Dept. of Labor & Emp. Sec., 133 F.3d 797, 802 (11th
Cir. 1998) and Doe v. Claiborne County, Tenn., 103 F.3d 495, 513
(6th Cir. 1996)).

Even if Plaintiff's complaint is liberally construed
and it is found that Defendants Taylor, Cleveland, Carter, and
Patrick were personally involved in or acquiesced in the alleged
unconstitutional activity,[7] none of them were causally connected
to the alleged misconduct of Defendant Odom. Plaintiffs show

---

[7] However, the bare facts alleged concerning Defendants Carter and Patrick may
not even be enough to meet this requirement. All Plaintiffs factually allege
concerning Defendant Carter is that he engaged with Plaintiffs during a
twenty minute phone call concerning the actions of Defendant Odom. (Docket
Entry No. 106, ¶82). Apparently, Defendant Carter was supposed to call
Plaintiffs back, but he never did (Docket Entry No. 106, ¶82), possibly
because he "seemed to be less than interested in speaking to [Plaintiffs]
again and further felt the tire burning was too long ago to act on." (Docket
Entry No. 106, ¶83). Similarly, Defendant Patrick was scheduled to meet with
Plaintiffs concerning the conduct of Defendant Odom (Docket Entry No. 106,
¶87), but the meeting was cancelled because Plaintiffs refused to comply with
the TWRA's Attorney's demands for physical documentation; they thought
electronic documentation should suffice. (Docket Entry No. 106, ¶89). There
are no factual allegations more than this.

only, if anything, "isolated occurrences" of a violation of Plaintiffs' rights. Only on a few occasions do Plaintiffs even mention these persons in the factual allegations of their Amended Complaint, and when they do, it usually amounts to legal conclusions about harassment, violations of constitutional rights, and general mistreatment of Plaintiffs. There is no allegation of "continued duration" or a "widespread pattern" of Defendants Taylor, Cleveland, Carter, and Patrick acting in violation of Plaintiffs' rights. To the contrary, Plaintiffs note how some of these Defendants worked with Plaintiffs to curb the interaction between Defendant Odom and Plaintiffs. (Docket Entry No. 106, ¶74).

Thus, Plaintiffs have failed to state a claim concerning Count II; no injunctive relief may be granted, so Count II should be dismissed.

Count III. The only State Defendant included in Count III is the State of Tennessee itself. As discussed above, the State of Tennessee is entitled to sovereign immunity under the Eleventh Amendment, so this count should be dismissed.

Count IV. The deprivation of property alleged in Count IV is based on the events of March 12, 2011. As discussed above, this action was not filed within the statute of limitations, so this count is dismissed.

None of these counts allege facts that permit an order of injunctive relief. Additionally, sovereign immunity bars actions against the State and its officials for monetary relief. Therefore, the undersigned Magistrate Judge finds that Counts I-IV, as they relate to State Defendants, fail to state a claim upon which relief can be granted, so they must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

**b. State Law Claims**

The remainder of Plaintiffs' complaint against the State Defendants alleges claims under state law, pursuant to either the Tennessee Governmental Tort Liability Act ("GTLA"), Tenn. Code Ann. § 29-20-101 through -408 (Counts V through XV), or the common law of Tennessee (Counts XVI and XVII). These pendent state law claims are not within this Court's original jurisdiction, but are supplemental to the federal question claims dealt with above. Title 28, section 1367 of the United States Code provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This statute codified the principles set forth in

<u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715 (1966),

wherein the Supreme Court held that jurisdiction over a pendent

state law claim is proper only when that claim and the federal

claim(s) over which the court has original jurisdiction "derive

from a common nucleus of operative fact," and are so closely

related that the plaintiff "would ordinarily be expected to try

all of them in one judicial proceeding." <u>Gibbs</u>, 383 U.S. at

725. However, even in the presence of such a close

relationship, § 1367 goes on to allow that the exercise of

supplemental jurisdiction is a matter of the court's discretion,

as follows:

> (c) The district courts may decline to exercise
> supplemental jurisdiction over a claim under
> subsection (a) if—
>
> (1) the claim raises a novel or complex issue of
> State law,
>
> (2) the claim substantially predominates over the
> claim or claims over which the district court has
> original jurisdiction,
>
> (3) the district court has dismissed all claims over
> which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other
> compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

> Depending on a host of factors, then—including the
> circumstances of the particular case, the nature of
> the state law claims, the character of the governing
> state law, and the relationship between the state and
> federal claims—district courts may decline to exercise
> jurisdiction over supplemental state law claims. The

statute thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."

City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 173 (1997) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

"After a 12(b)(6) dismissal [of all claims under the court's original jurisdiction], there is a strong presumption in favor of dismissing supplemental claims." Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1255 (6th Cir. 1996) amended on denial of reh'g, 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998). Furthermore, both this Court and the Sixth Circuit have repeatedly held that the Tennessee legislature's "unequivocal preference" that GTLA claims be adjudicated in the circuit courts of the state is an exceptional circumstance justifying the district court's decision to decline supplemental jurisdiction over such claims, pursuant to § 1367(c)(4). E.g., Gregory v. Shelby Co., Tenn., 220 F.3d 433, 446 (6th Cir. 2000), abrogated in part by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598 (2001), as stated in DiLaura v. Twp. of Ann Arbor, 471 F.3d 666, 671 n.2 (6th Cir. 2006); Bluedorn v. Wojnarek, 2008 WL 4791540, at *12 (M.D. Tenn. Oct. 29, 2008) (citing cases).

In light of this authority, the undersigned concludes that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, and dismiss them without prejudice.

## IV.    Recommendation

For the reasons stated above, the undersigned Magistrate Judge recommends that the motion to DISMISS filed on behalf of State Defendants be GRANTED.  The Court should dismiss Plaintiffs' federal claims with prejudice, and their state claims without prejudice to being re-filed in state court.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have **14 days** from receipt of any objections filed in this Report in which to file any responses to said objections.  Failure to file specific objections within **14 days** of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  Thomas v. Arn, 474 U.S. 140 (1985).

**ENTERED** this 28th day of August, 2013.

                              s/ John S. Bryant
                              _____
                              JOHN S. BRYANT
                              UNITED STATES MAGISTRATE JUDGE